# EXHIBIT "B"

# EXHIBIT "B"

## REAL ESTATE LIEN NOTE

$700,000.00                                                                                           November 13, 2008
                                                                                                                         Las Vegas, Nevada

### DISCLOSURE

      AT A MATURITY YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE ON THIS NOTE AND UNPAID INTEREST THEN DUE. THE PAYEE IS UNDER NO OBLIGATION TO REFINACE THIS NOTE AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE A PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE PAYEE WHERE YOU HAVE THIS NOTE AT MATURITY. YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME PAYEE.

      THE PAYEE, AT ITS OPTION, MAY CONSIDER AN APPLICATION TO REFINACE THE BALLOON PAYMENT CONVERTING THIS NOTE TO A TERM OF YEARS TO BE DETERMINED AT THE TIME OF APPLICATION AND AT A RATE OF INTEREST AS THEN BEING OFFERED BY PAYEE. THE PAYEE WILL NOT CONSIDER AN APPLICATION UNLESS THE FILLOWING CONDITIONS ARE SATISFIED: (1) NO DEFUALT, PRIOR OR CURRENT, EXISTED OR EXISTS WITH THIS NOTE OR ANY DOCUMENT EXECUTED IN CONNECTION HEREWITH; (2) YOU MUST MAKE AN APPLICATION NO LATER THAN FORTY-FIVE (45) DAYS PRIOR TO THE MATURITY DATE OF THIS NOTE; (3) YOPU MUST PAY ALL CHARGES AND COSTS OF PAYEE ASSOCATED WITH THE NEW LOAN, INCLUDING, BUT NOT LIMITED TO, DISCOUT POINTS, CLOSING COSTS AND PREPAIDS; (4) YOU MUST QUALIFY FOR THE NEW LOAN BASED UPON THE THEN EXISTING PAYEE REQUIREMENTS, INCLUDING, BUT NOT LIMITED TO, A REVIEW OF TITLE AND APPRAISED VALIE OF THE PROPERTY, LOAN TO VALUE RATIOS AND CREDITWORTHINESS.

      FOR VALUE RECEIVED, ASHJIAN DEVELOPMENT, LLC, a Nevada Limited Liability Company ("Borrower"), hereby promises to pay to the order of NEVADA NATIONAL BANK (together with any and all of its successors and assigns and/or any other holder of this Note, "Lender"), without offset, in immediately available funds in lawful money of the United States of America, at 6110 Spring Mountain Road, Las Vegas, Nevada 89146, the principal sum of Seven Hundred Thousand and No/100 Dollars ($700,000.00) (or the unpaid balance of all principal advanced against this Note, if that amount is less), together with interest on the unpaid principal balance of this Note from day to day outstanding as hereinafter provided.

      Section 1    Payment Schedule and Maturity Date. Prior to maturity, accrued and unpaid interest shall be due and payable in arrears on the same day of each month commencing on DEC 13, 2008 as set forth below. The entire principal balance of this Note then unpaid, together with all accrued and unpaid interest and all other amounts payable hereunder and under the other Loan Documents (as hereinafter defined), shall be due and payable in full on November 13, 2009 (the "Maturity Date"), the final maturity of this Note.

      This Note shall be due and payable on demand, and if demand is not earlier made, then this Note shall be paid in one payment of all outstanding principal and accrued but unpaid interest on November 13, 2009. In addition Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date beginning with December 13, 2008,

1

with all subsequent interest payments to be due on the same day each month thereafter. Provided, however, in the event payments as set forth herein are due on the 29th, 30th or 31st day of the month, then said payment date for the months which do not have a 29th, 30th or 31st day shall be due on the last day of such month.

The interest payment is currently estimated at **SIX PERCENT (6%)** per annum. In the event the interest rate is adjusted as set forth herein, and the monthly payments provided above are insufficient to pay the scheduled principal payment under the desired amortization schedule, the Maker agrees that the Payee may, in its sole discretion, and from time to time during the term of this Note, recalculate the amount of the principal and interest payments specified above so as to provide for a monthly payment sufficient to maintain the scheduled principal reduction of this Note, together with the payment of all accrued interest, as provided in the initial amortization schedule referenced above.

Section 2    Security; Loan Documents. The security for this Note includes a Deed of Trust, Assignment, Security Agreement and Fixture Filing (as the same may from time to time be amended, restated, modified or supplemented, the "Deed of Trust") of even date herewith from Borrower to Lender, conveying and encumbering certain real and personal property more particularly described therein (the "Property"). This Note, the Deed of Trust, the Loan Agreement between Borrower and Lender of even date herewith (as the same may from time to time be amended, restated, modified or supplemented, the "Loan Agreement") and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note (the "Loan"), as the same may from time to time be amended, restated, modified or supplemented, are herein sometimes called individually a "Loan Document" and together the "Loan Documents."

Section 3    Interest Rate.

(a)    Prime Rate. The unpaid principal balance of this Note from day to day outstanding, which is not past due, shall bear interest at a fluctuating rate of interest equal to the **Prime Rate of Lender plus two hundred (200) basis points per annum.** The term "Prime Rate" means, on any day, the rate of interest per annum reported in The Wall Street Journal (or the average prime rate if a high and a low prime rate are therein reported), and the Prime Rate shall change without notice with each change in such prime rate as of the date such change is reported. If The Wall Street Journal does not then or ceases to report such a prime rate, the Prime Rate shall thereafter be determined by such alternate method as may be reasonably selected by Lender. Each time the Prime Rate changes, the per annum rate of interest on this Note shall change immediately and contemporaneously with such change in the Prime Rate. Interest shall be computed for the actual number of days which have elapsed, on the basis of a 360-day year. Lender reserves the right (and Borrower agrees) to adjust, from time to time, the monthly installments due hereon to take into account changes in the Prime Rate. In the event of a change in the Prime Rate, the monthly installments shall be adjusted to an amount sufficient to fully amortize the remaining principal balance and interest thereon at the new Prime Rate over the Amortization Period. Notice of any such adjustment in the monthly installment shall be given in writing to Borrower by Lender prior to the date any such adjusted payment shall become due.

(b)    Past Due Rate. If any amount payable by Borrower under any Loan Document is not paid when due (without regard to any applicable grace periods), such amount shall thereafter bear interest at the Past Due Rate (as defined below) to the fullest extent permitted by applicable law. Accrued and unpaid interest on past due amounts (including interest on past due interest) shall be due and payable on demand, at a fluctuating rate per annum (the "Past Due Rate") equal to the maximum rate of nonusurious Interest allowed by the applicable laws of the

State of Nevada or the United States of America at the time an amounts under this Note become past due. Payee, Maker and all other liable parties intend to conform and contract in strict compliance with applicable usury law from time to time in effect. All agreements between Payee, Maker and all other liable parties (and any other party liable with respect to indebtedness under any document executed in connect herewith) are limited by the provisions of this paragraph, which override and control such agreements, whether now or existing or hereafter arising and whether written or oral. Nothing in this Note shall authorize the charging or collection of Interest in excess of the highest rate allowed by law (the "Highest Lawful Rate"). This Note and the maximum rate of nonusurious Interest application to the loan evidence by this Note, shall be governed by whichever of the applicable laws of the United States of America or of the State of Nevada are in effect on the date of the loan evidenced by this Note permit a highest interest rate, and to the extent allowed by law, as now or as may hereafter be in effect. For the purposes hereof, "Interest" shall include the aggregate of all charges, which constitute Interest under such laws, that are contracted for, reserved, taken, charged or received under this Note. In furtherance thereof, the Maker and the Payee stipulate and agree that none of terms and provisions contain in this Note or any other document executed in connection herewith shall ever be construed to create a contract to pay for the use, forbearance or detention of money with Interest in excess of the "Highest Lawful Rate". In the event that the Payee or any other holder of this Note ever charges or contracts for any amount in excess of lawful Interest, the documents or instruments constituting such charge or contracts for any amount in excess of lawful Interest, the documents or instruments constituting such charge or contract shall be *ipso facto* modified without any further action by any person so that no amount in excess of lawful Interest at a rate in excess of lawful Interest shall be charged or contracted for. If Payee receives anything of value that is characterized as interest under applicable law and that would apart from this provision be in excess of the "Highest Lawful Rate", then an amount equal to the amount that would have been excessive interest will, without penalty, be applied to the reduction of the principal amount owing on the indebtedness evidenced by this Note in the inverse order of its maturity and not to the payment of interest, or, at the option of Payee, be refunded to Maker or the other payor thereof if and to the extent of such amount that would have been excessive exceeds such unpaid principal. The right to accelerate maturity of this Note or any other indebtedness does not include the right to accelerate any interest that has not otherwise accrued on the date of such acceleration. In determining whether or not the interest paid or payable under any specific contingency exceeds the 'Highest Lawful Rate", the Maker and the Payee shall, to the maximum extent permitted under applicable law, (a) treat all loans as a single extension of credit and the Maker and the Payee agree that such is the case and that provision herein for multiple loans and Notes is for convenience only), (b) characterize any nonprincipal payment as an expense, fee or premium rather than as Interest, (c) exclude voluntary prepayments and the effects thereof, and (d) "spread" the total amount of Interest throughout the entire contemplated term of the loans. The provisions of this paragraph shall control over all other provisions of the other documents executed in connection herewith which may be in apparent conflict herewith. If at any time the Interest Rate reflected on the face of amount of this Note exceeds the "Highest Lawful Rate, this Note shall bear Interest at the "Highest Lawful Rate" until the total mount of Interest accrued on this Note equals the total amount of Interest which would have accrued if the Interest Rate on the face of this Note had been in effect at all times.

      Section 4    Prepayment. Borrower may prepay the principal balance of this Note, in full at any time or in part from time to time, without fee, premium or penalty, provided that: (a) no prepayment may be made which in Lender's judgment would contravene or prejudice funding under any applicable permanent loan commitment or tri-party agreement or the like; (b) Lender shall have actually received from Borrower prior written notice of (i) Borrower's intent to prepay, (ii) the amount of principal which will be prepaid (the "Prepaid Principal"), and (iii) the date on

3

which the prepayment will be made; (c) each prepayment shall be in the amount of $1,000 or a larger integral multiple of $1,000 (unless the prepayment retires the outstanding balance of this Note in full); and (d) each prepayment shall be in the amount of 100% of the Prepaid Principal, plus accrued unpaid interest thereon to the date of prepayment, plus any other sums which have become due to Lender under the Loan Documents on or before the date of prepayment but have not been paid. If this Note is prepaid in full, any commitment of Lender for further advances shall automatically terminate.

Section 5    Late Charges. Intentionally Left Blank.

Section 6    Certain Provisions Regarding Payments. All payments made under this Note shall be applied, to the extent thereof, to late charges, to accrued but unpaid interest, to unpaid principal, and to any other sums due and unpaid to Lender under the Loan Documents, in such manner and order as Lender may elect in its sole discretion, any instructions from Borrower or anyone else to the contrary notwithstanding. Remittances shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived) and shall be accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Lender of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only, notwithstanding any notation on or accompanying such partial payment to the contrary, and shall not in any way (a) waive or excuse the existence of an Event of Default (as hereinafter defined), (b) waive, impair or extinguish any right or remedy available to Lender hereunder or under the other Loan Documents, or (c) waive the requirement of punctual payment and performance or constitute a novation in any respect. Payments received after 2:00 o'clock p.m. shall be deemed to be received on, and shall be posted as of, the following business day. Whenever any payment under this Note or any other Loan Document falls due on a Saturday, a Sunday or another day on which the offices of Lender are not open for the conduct of its banking business at the place where this Note is payable, such payment may be made on the next succeeding day on which the offices of Lender are open for such business.

Section 7    Events of Default. The occurrence of any one or more of the following shall constitute an "Event of Default" under this Note:

(a)    Borrower fails to pay when and as due and payable any amounts payable by Borrower to Lender under the terms of this Note.

(b)    Any covenant, agreement or condition in this Note is not fully and timely performed, observed or kept, subject to any applicable grace or cure period.

(c)    An Event of Default (as therein defined) occurs under any of the Loan Documents other than this Note (subject to any applicable grace or cure period).

Section 8    Remedies. Upon the occurrence of an Event of Default, Lender may at any time thereafter exercise any one or more of the following rights, powers and remedies:

(a)    Lender may accelerate the Maturity Date and declare the unpaid principal balance and accrued but unpaid interest on this Note, and all other amounts payable hereunder and under the other Loan Documents, at once due and payable, and upon such declaration the same shall at once be due and payable.

4

(b) Lender may set off the amount due against any and all accounts, credits, money, securities or other property now or hereafter on deposit with, held by or in the possession of Lender to the credit or for the account of Borrower, without notice to or the consent of Borrower.

(c) Lender may exercise any of its other rights, powers and remedies under the Loan Documents or at law or in equity.

Section 9    Remedies Cumulative. All of the rights and remedies of Lender under this Note and the other Loan Documents are cumulative of each other and of any and all other rights at law or in equity, and the exercise by Lender of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights and remedies. No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be exercised at any time and from time to time. No failure by Lender to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default.

Section 10    Costs and Expenses of Enforcement. Borrower agrees to pay to Lender on demand all costs and expenses incurred by Lender in seeking to collect this Note or to enforce any of Lender's rights and remedies under the Loan Documents, including court costs and reasonable attorneys' fees and expenses, whether or not suit is filed hereon, or whether in connection with bankruptcy, insolvency or appeal.

Section 11    Service of Process. Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note by (a) the mailing of a copy thereof by certified mail, postage prepaid, return receipt requested, to Borrower and (b) serving a copy thereof upon **Brittan Ashjian and Scott Ashjian**, the agents hereby designated and appointed by Borrower as Borrower's agent for service of process. Borrower irrevocably agrees that such service shall be deemed to be service of process upon Borrower in any such suit, action, or proceeding. Nothing in this Note shall affect the right of Lender to serve process in any manner otherwise permitted by law and nothing in this Note will limit the right of Lender otherwise to bring proceedings against Borrower in the courts of any jurisdiction or jurisdictions, subject to any provision or agreement for arbitration or dispute resolution set forth in the Loan Agreement.

Section 12    Heirs, Successors and Assigns. The terms of this Note and of the other Loan Documents shall bind and inure to the benefit of the heirs, devisees, representatives, successors and assigns of the parties. The foregoing sentence shall not be construed to permit Borrower to assign the Loan except as otherwise permitted under the Loan Documents.

Section 13    General Provisions. Time is of the essence with respect to Borrower's obligations under this Note. If more than one person or entity executes this Note as Borrower, all of said parties shall be jointly and severally liable for payment of the indebtedness evidenced hereby. Borrower and each party executing this Note as Borrower hereby severally (a) waive demand, presentment for payment, notice of dishonor and of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices (except any notices which are specifically required by this Note or any other Loan Document), filing of suit and diligence in collecting this Note or enforcing any of the security herefor; (b) agree to any substitution, subordination, exchange or release of any such security or the release of any party primarily or secondarily liable hereon; (c) agree that Lender shall not be required first to institute suit or exhaust its remedies hereon against Borrower or others liable or to become liable hereon or to perfect or enforce its rights against them or any security herefor; (d) consent to any extensions or postponements of time of payment of this Note for any period or periods of time and to any partial

5

payments, before or after maturity, and to any other indulgences with respect hereto, without notice thereof to any of them; and (e) submit (and waive all rights to object) to non-exclusive personal jurisdiction of any state or federal court sitting in the state and county in which payment of this Note is to be made for the enforcement of any and all obligations under this Note and the other Loan Documents; (f) waive the benefit of all homestead and similar exemptions as to this Note; (g) agree that their liability under this Note shall not be affected or impaired by any determination that any title, security interest or lien taken by Lender to secure this Note is invalid or unperfected; and (h) hereby subordinate to the Loan and the Loan Documents any and all rights against Borrower and any security for the payment of this Note, whether by subrogation, agreement or otherwise, until this Note is paid in full. A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. This Note may not be amended except in a writing specifically intended for such purpose and executed by the party against whom enforcement of the amendment is sought. Captions and headings in this Note are for convenience only and shall be disregarded in construing it. This Note and its validity, enforcement and interpretation shall be governed by the laws of the state in which payment of this Note is to be made (without regard to any principles of conflicts of laws) and applicable United States federal law. Whenever a time of day is referred to herein, unless otherwise specified such time shall be the local time of the place where payment of this Note is to be made. The words "include" and "including" shall be interpreted as if followed by the words "without limitation."

Section 13    Notices. Any notice, request, or demand to or upon Borrower or Lender shall be deemed to have been properly given or made when delivered in accordance with the terms of the Loan Agreement regarding notices.

Section 14    No Usury. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Section shall control every other covenant and agreement in this Note and the other Loan Documents. If applicable state or federal law should at any time be judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Loan, or if Lender's exercise of the option to accelerate the Maturity Date, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by applicable law, then it is Lender's express intent that all excess amounts theretofore collected by Lender shall be credited on the principal balance of this Note and all other indebtedness secured by the Deed of Trust, and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Lender for the use or forbearance of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan.

Section 15    Governing Law. Except as expressly stated herein, this Note shall be governed by and construed in accordance with the laws of the State of Nevada and Borrower acknowledges that by execution and delivery of this Note that Borrower has transacted business in the State of Nevada and Borrower hereby voluntarily submits to, consent to, and waives any

defenses to the jurisdiction courts located in the State of Nevada as to all matters relating to or arising from this Note.

Section 16    Counterparts/Signatures.   This Agreement may be executed in any number of counterparts, each of which when duly executed and delivered shall be an original, but all such counter-parts shall constitute one and the same agreement. Any signature page of the Agreement may be detached from any counterpart without impairing the legal effect of any signatures, and may be attached to another counterpart, identical in form, but having attached to it one or more additional signature pages.

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the date first above written.

**Borrower:**

ASHJIAN DEVELOPMENT, LLC a Nevada Limited Liability Company

_____
BRITTAN ASHJIAN, Member/Manager

ASHJIAN DEVELOPMENT, LLC a Nevada Limited Liability Company

_____
SCOTT ASHJIAN, Member/Manager

NOTARY PAGE TO FOLLOW

7

STATE OF NEVADA  )
                 ) ss.
COUNTY OF CLARK  )

This instrument was acknowledged before me on November 13, 2008, by BRITTAN ASHJIAN, Member/Manager of ASHJIAN DEVELOPMENT, LLC, a Nevada Limited Liability Company.

_____
Notary Public

> Notary Public - State of Nevada
> County of Clark
> ROSEMARY AJIZIAN
> My Appointment Expires
> No: 92-0095-1    April 8, 2011

STATE OF NEVADA  )
                 ) ss.
COUNTY OF CLARK  )

This instrument was acknowledged before me on November 13, 2008, by SCOTT ASHJIAN, Member/Manager of ASHJIAN DEVELOPMENT, LLC, a Nevada Limited Liability Company.

_____
Notary Public

> Notary Public - State of Nevada
> County of Clark
> ROSEMARY AJIZIAN
> My Appointment Expires
> No: 92-0095-1    April 8, 2011

8